IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JASON AND AMANDA CRAWFORD PARENTS OF MINOR CHILD (Z.C.), | ) ) ) | |
| Plaintiffs, | ) ) | |
| -vs- | ) ) | CIV-16-751-R |
| DEER CREEK PUBLIC SCHOOLS, KRISTY VAN DORN, RANET TIPPENS, DR. JAMES ROSE, JOHN ROBERTSON, KENNETH DENNIS, DANNY BARNES, JERROD ROBERTS, JASON ZALOUDIK and MELISSA JORDAN, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER

Plaintiffs Jason and Amanda Crawford, on behalf of their minor child, Z.C., bring suit against Deer Creek Public Schools, its various administrators, and members of the school board for alleged civil rights violations against their child. Defendants have moved to dismiss for failure to state a claim. (Doc. 8). For the reasons that follow, Defendants' motion to dismiss is GRANTED.

**I. Background**

What started as a middle school's investigation into a sexual assault by a student has now careened into a civil rights dispute.

That investigation began when Kristy Van Dorn, Principal of Deer Creek Middle School, learned on the morning of January 20, 2016, that an incident had occurred in the school's practice gym the night before. According to a female student, she had heard a noise in an adjoining locker room and upon investigating was sexually assaulted by a male student, Z.C. Van Dorn immediately had the female student examined by the school nurse, who found no signs of bruising, scrapes, or abrasions. And when Van Dorn consulted video footage of the gym, it too yielded no evidence that there had been any physical interaction between the students.

It looked as if only Z.C. could corroborate the female student's story. But Z.C., when questioned by Van Dorn in her office, told her he did not want to talk about it. Nor did he want to write a statement. Van Dorn eventually summoned Z.C.'s parents, Jason and Amanda Crawford, to the school. On arrival they were told by Van Dorn that their son had already admitted to the sexual assault and that the stories of Z.C. and his female accuser matched. The Crawfords insist that at this point they were still in the dark regarding the specific allegations against their son. Nonetheless, they had their son provide a written confession, in no small part because Van Dorn suggested this would reduce his punishment. But as it turns out, that punishment was not decided by Van Dorn. Instead, Van Dorn apparently delegated that decision to the school Superintendent, Ranet Tippens, who settled on a long-term suspension for Z.C.

The Crawfords appealed. Yet their appeal allegedly did not follow the normal procedure of the Deer Creek Independent School District, which allegedly calls for review by a committee only for suspensions of less than 10 days. Longer suspensions are

apparently reviewed by the Superintendent or her designee. Nonetheless, the Crawfords' appeal reached the review committee on January 28, 2016.

It was not until the hearing that the Crawfords first heard of the specific allegations against their son. And contrary to what Van Dorn had told them at the school, there appeared to be factual differences between the statements of Z.C. and the female student. Attempting to highlight these differences, the Crawfords read instant messages between the female student and Z.C. to the review panel. Yet the chairman of the panel, Dr. James Rose, declined to investigate further.

Roughly a week passed before Z.C. was approached by the son of one of the members of the review panel at a church youth group meeting. Melissa Jordan's son told Z.C. that he knew all about Z.C.'s disciplinary hearing and that the committee was going to uphold his suspension, which turned out to be true. This did not stop the Crawfords from seeking further review. Another hearing was held on March 10, 2016, but school district's board of education unanimously voted to uphold the suspension.

Now the Crawfords, on behalf of Z.C., argue that Defendants violated their son's federally secured rights under 42 U.S.C. § 1983. All Defendants have moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Defendants have the better arguments. The Crawfords' claims are dismissed.

## II.     Standard of Review

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). "The pleading standard Rule 8 announces does

not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, a pleading must offer more than "labels and conclusions" and "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. There must be "sufficient factual matter, [which if] accepted as true . . . state[s] a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A plausible claim is one that "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plaintiff must "nudge[] his claims across the line from conceivable to plausible . . . ." *Twombly*, 550 U.S. at 570. Further, the Court "must accept all the well-pleaded allegations of the complaint . . . and must construe them in the light most favorable to the [non-moving party]." *Thomas v. Kaven*, 765 F.3d 1183, 1190 (10th Cir. 2014). Even still, if the allegations "do not support a legal claim for relief," then "as a matter of law" they must be dismissed. *Baker v. Publishers Clearing House*, 413 F. App'x 85, 87 (10th Cir. 2011).

### III. Due Process Claims

The Crawfords' single claim for violation of procedural due process is essentially three: (1) that Van Dorn, Superintendent Tippens, and the review committee failed to follow the policies and procedures adopted by Deer Creek Independent School District; (2) that Van Dorn's inaccurate portrayal of the female student's and Z.C.'s versions of events prohibited timely investigation and adequate preparation for the hearing before the Review Committee; and (3) that, at some point or another, the Crawfords were victims of

4

a biased review. But whether their due process claim is construed on one or all of these grounds, none state a procedural due process claim.

"The Fourteenth Amendment forbids the state from depriving an individual of life, liberty, or property without due process of law." *Couture v. Bd. of Ed. of Albuquerque Pub. Sch.*, 535 F.3d 1243, 1256 (10th Cir. 2008). The procedural due process clause, however, does not safeguard an infinite number of interests; rather, "[a] person alleging that he has been deprived of his right to procedural due process must prove two elements: that he possessed a constitutionally protected liberty or property interest such that the due process protections were applicable, and that he was not afforded an appropriate level of process." *Id.* (internal quotes and citation omitted). By way of the Supreme Court's decision in *Goss v. Lopez*, public school students such as Z.C. enjoy protected property interests in public education and are thus entitled to certain procedural due process protections within the educational context. *Id.* (citing Goss, 419 U.S. 565, 574, 95 S.Ct. 729 (1975)). That does not mean that "every school disciplinary action gives rise to a federal constitutional claim." *Hatch v. Goerke*, 502 F.2d 1189, 1194 (10th Cir. 1974). Yet when there is a "complete deprivation of education"—such as with a long term suspension like in this case—"the student at minimum is entitled to 'notice . . . and some kind of hearing,' though the 'timing and content of the notice and the nature of the hearing will depend on the appropriate accommodation of competing interests involved.'" *Couture*, 535 F.3d at 1257 (citing *Goss*, 419 U.S. at 578–79).

If identifying whether there has been a deprivation is the first step, the second is evaluating the adequacy of the procedure afforded. Unlike the case at hand, *Goss* dealt

5

only with the procedural safeguards afforded to students who received short-term suspensions—that is, those ten days or less. 419 U.S. at 575. And to be sure, the Tenth Circuit has noted the limits of *Goss*. *See Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1240 (10th Cir. 2001) (explaining that though *Goss* "sets the standard for procedural due process owed to students facing short-term school suspension," the case still "provides some guidance," particularly with its instruction that the competing interests and facts involved will typically dictate the adequacy of whatever process was provided). And to assess those interests, many appellate courts, the Tenth Circuit included, have simply applied the balancing test of *Matthews v. Eldridge*, 424 U.S. 319 (1976), when considering whether additional processes were warranted in cases dealing with long term suspensions or expulsions. *See Watson*, 242 F.3d at 1240 (collecting cases).

*Matthews*'s balancing calls for a court to weigh: "(1) the private interest that will be affected by the official action, (2) the probable value, if any, of additional or substitute procedural safeguards, and (3) the government's interest, including the fiscal and administrative burden, that the additional or substitute procedural requirements would entail." *Watson*, 242 F.3d 1240 (citing *Matthews*, 424 U.S. at 334–335). Further, to establish a denial of due process, a student must show substantial prejudice from the allegedly inadequate procedure. In other words, the concern is whether additional procedures would have been futile. *Id*.

With this in mind, all three allegations of due process deficiencies fail to state a plausible claim. First, the Crawfords point to Deer Creek School District's failure to follow its own policies and procedures by using a committee composed of administrators,

rather than the Superintendent herself, to review the Crawfords' challenge to their son's suspension. That allegation alone, however, will not suffice to state a claim, since "even in the disciplinary context, a school's failure to comply with its own rules does not, in itself, constitute a violation of the Fourteenth Amendment." *Brown v. University of Kansas*, 599 F.App'x 833, 838 (10th Cir. 2015); *cf. White v. Salisbury Tp. Sch. Dist.*, 588 F.Supp. 608, 614 (E.D. Pa. 1984) ("[W]here a state has issued regulations requiring school districts to promulgate and publish specific procedural rules and safeguards governing suspensions, a failure to comply with those regulations would violate state law *only* and would not rise to the level of a constitutional violation.") (emphasis in original). What matters is whether "the procedures afforded to [Z.C.] were fair as a matter of law." *Brown*, 599 F.App'x at 838. That fairness inquiry is at least implicated in the other two ways in which Defendants allegedly ran roughshod over the Crawfords' due process rights: (a) Van Dorn's inaccurately informing them on Jan. 20 that Z.C.'s and the female student's stories matched (resulting in the Crawfords being caught off guard when they learned for the first time at the January 28 hearing that there were discrepancies); and (b) that the review committee was biased.

    The first argument fails as a matter of law. Clearly the Crawfords believe they had inadequate time to prepare for the hearing before the Review Committee—a hearing held eight days after Z.C. was suspended. Less clear is what further evidence they could have unearthed that would have made a difference. Indeed, their Complaint offers nothing besides the allegation that it was at the hearing on "January 28, 2016, for the first time [that] Plaintiffs heard the specific allegations being made against their son" and that it

was only then that they "became aware of factual differences existing in the two student's [sic] statements, contrary to the assertions of Van Dorn that their stories matched." (Doc. 1, at 8). Nonetheless, Plaintiffs were still able to read messages between the female student and Z.C. to demonstrate these alleged inconsistencies at the hearing. (*Id.*). The Crawfords propose nothing else that would have aided them in their defense. "In light of [this], further procedural safeguards would have added little." *Brown*, 599 App'x at 837.

The second allegation—biased review by the committee—stems from Superintendent Tippens's role as immediate supervisor of members of the review committee. Thus, the theory goes, the committee members felt uneasy about reversing the suspension allegedly imposed by Tippens. To be sure, school officials are doubtlessly required "to insure 'fundamentally fair procedures' [in] deciding whether to exclude a student from school . . . ." *Heyne v. Metro Nashville Pub. Sch.*, 655 F.3d 556, 567 (6th Cir. 2011) (quoting *Newsome v. Batavia Local Sch. Dist.*, 842 F.2d 920, 927 (6th Cir. 1998)). But a school disciplinarian's role in both investigation and ordering punishment will not by itself render the process constitutionally deficient. *Newsome*, for example, rejected a procedural due process claim that a school official's dual role in investigating a student's suspected drug-trafficking and then expelling him rendered him biased per se. 842 F.2d at 927. In fact, several circuits have held that "due process is not necessarily violated when the school official who initiates, investigates, or prosecutes charges against a student plays a role in the decision to suspend the student." *Heyne*, 655 F.3d at 567; *see also Lamb v. Panhandle Cmty. Unit. Sch. Dist. No. 2*, 826 F.2d 526, 529–30 (7th Cir. 1987); *Brewer by Dreyfus v. Austin Indep. Sch. Dist.*, 779 F.2d 260, 264 (5th Cir. 1985).

And *Goss* at least implied that due process does not necessarily preclude a school official who witnesses student misconduct from then deciding to suspend the student. *Goss*, 419 U.S. at 584 ("[A]n informal give-and-take between student and disciplinarian, preferably prior to the suspension, will add little to the factfinding function where the disciplinarian himself has witnessed the conduct forming the basis of the charge").

Considering that, this much is certain: the review committee's relationship with Superintendent Tippens does not render the committee's decision impartial per se. Nor is it enough by itself to make this Court discard the "presumption of honesty and integrity" to which school officials are entitled to "in their decisionmaking powers." *Velharticky v. Indep. Sch. Dist. No. 3 of Roger Mills Cnty.*, Okla., 846 F.Supp. 941, 944 (W.D. Okla. 1993). The issue is whether the committee "had some personal or financial stake in the decision that might create a conflict of interest . . . ." *Hortonville joint Sch. Dist. No. 1 v. Hortonville Ed. Ass'n*, 426 U.S. 482, 491–92, 96 S.Ct. 2308 (1976). On these allegations, there is not enough to create a plausible claim.

But suppose there was. Still, any conflict of interest plaguing the committee's review of Z.C.'s case would have been cured by the board of education's subsequent review of the committee's decision. "Cases have consistently held that a violation of procedural due process may be waived or cured." *U.S. Postal Serv. v. Nat. Ass'n of Letter Carriers*, 847 F.2d 775, 778 (11th Cir. 1988); see also *Glenn v. Newmann*, 614 F.2d 467, 472 (5th Cir. 1980), *criticized on other grounds by County of Monroe, Florida v. U.S. Dept. of Labor*, 690 F.2d 1359, 1363 (11th Cir. 1982) (procedural due process violation resulting from lack of adequate notice in pre-termination procedures was cured through

9

subsequent post-termination public hearing); *see also G.J.B. & Associates, Inc. v. Singleton*, 913 F.2d 824, 832 (10th Cir. 1990) (noting that even if the district court's imposing sanctions on an attorney for violating a court order had run afoul of due process in its failure to provide the attorney notice and an opportunity to be heard, the court's subsequent hearing "was sufficient to cure the defect, if any, in the process [the attorney] previously received.")

Put differently, even if Van Dorn absconded from her duties to decide Z.C.'s punishment; even if the Crawfords were actually inhibited from putting on their best defense at the January 28 hearing; and even if that hearing was before impartial administrators, any deficiencies in due process would have been cured by the board of education's subsequent review. And their review could not have been tainted by any relationship to Tippens: the District's Board of Education has the authority to hire and fire the Superintendent under Oklahoma law. Okla. Stat. Ann. tit. 70, § 5-117.[1] Nor have the Crawfords pled any fact other than that the school board "failed to fully and impartially investigate" the suspension that would give rise to a plausible claim. And the Crawfords can hardly argue that they lacked time to prepare; the board of education's hearing took place more than 40 days following the committee's review. Their procedural due process claim is therefore dismissed.

### IV. Fifth Amendment Claim

---

[1] "The board of education of each school district shall have power to . . . [c]ontract with and fix the duties and compensation of . . . superintendents . . . and other necessary employees of the district." Id. § 5-117(A)(14); *see also Oklahoma Accreditation Standard* 210:35-3-48(a)(2) ("The local board shall be responsible for the selection and evaluation of its chief executive officer who shall be the superintendent or other designated head of the school system."

Aside from their procedural due process claim, the Crawfords point to an alleged violation of Z.C.'s Fifth Amendment privilege against self-incrimination: Van Dorn's continued questioning of Z.C. in her office after he "expressed his desire not to speak." (Doc. 1, at 11). This too misses the mark.

The Fifth Amendment provides in part that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend V. It guarantees "the right of the person to remain silent unless he chooses to speak in the unfettered exercise of his own free will, and to suffer no penalty . . . for such silence." *Weaver v. Brenner*, 40 F.3d 527, 534 (2d Cir.1994) (citing *Malloy v. Hogan*, 378 U.S. 1, 8, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964)). "*Miranda*'s protections are not triggered, however, until the suspect is both 'in custody' and subjected to 'interrogation.' *C.S. v. Couch*, 843 F.Supp.2d 894, 917 (N.D. Ind. 2011) (*citing United States v. Barker*, 467 F.3d 625, 628 (7th Cir. 2006)). "For the purposes of *Miranda,* a person is "in custody" when there is "questioning initiated by *law enforcement officers* after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* (emphasis added).

Courts have therefore distinguished between a student being questioned at school by school officials as opposed to law enforcement officers. *See e.g., S.E. v. Grant Cnty. Bd. of Ed.*, 533 F.3d 633, 641 (6th Cir. 2008) (finding that an assistant principal who was not acting at the behest of law enforcement officers and whose questioning of a student occurred outside of the presence of law enforcement officers was not required to give the student *Miranda* warnings). The Crawfords have not pointed the Court to any authority

that holds otherwise. And indeed, the weight of authority undermines their claim. *See Salazar v. Luty*, 761 F. Supp. 45, 47 (S.D. Tex. 1991) (finding the right against self-incrimination did not extend to a school security guard's questioning a student); *Jarmon v. Batory*, 1994 WL 313063 at *11 (E.D. Pa. June 29, 1994) (school administrator's questioning of a student regarding a school disciplinary issue did not require that a *Miranda* warning be provided to the student); *Pollnow v. Glennon*, 594 F.Supp. 220, 224 (S.D.N.Y. 1984), *aff'd* 757 F.2d 496 (student's claim that he was denied his Fifth Amendment right against self-incrimination by school officials "need[ed] but scant consideration" considering "there is . . . no requirement for any sort of '*Miranda*' type warning in such informal, non-custodial discussions").

That is not to say that the right against-self-incrimination is always forfeited in the school context. Rather, "in the context of questioning by school officials, the right against self-incrimination is considerably diminished." *Sher v. Upper Moreland Twp. Sch. Dist.*, 2011 WL 3652474, at *12 (E.D. Pa. Aug. 19, 2011), *vacated on other grounds*, 481 F. App'x 762 (3d Cir. 2012). The Amendment's rights seem to be only diminished, not eradicated, where an administrator is acting on behalf of law enforcement officers. But even then, there needs to be some allegation by the Crawfords suggesting that was the case. The allegations that Van Dorn was obligated to turn the information over to the police and she was thus an agent of the State fail as a matter of law. *See e.g.*, *S.E. v. Grant Cnty. Bd. of Educ.*, 544 F.3d 633, 640 (6th Cir. 2008) (rejecting that school official "acted in conjunction with or at the behest of police" by "report[ing] the incident to law

enforcement . . . and [by taking the student's] statement or confession"). Their § 1983 claim based on the Fifth Amendment is therefore dismissed.

V. FERPA Claim

The Crawfords' third § 1983 claim is for rights violated under the Federal Education Records Privacy Act (FERPA) and the First Amendment. The Crawfords contend that when the son of Melissa Jordan approached Z.C. at a church youth group meeting to reveal his awareness that his suspension would not be overturned, this was somehow a violation of the First Amendment and FERPA. Both claims are quickly disposed of. First, it is not clear how either Melissa Jordan's or her son's statements infringed on the First Amendment rights of *the Crawfords*. And as for the FERPA claim, it too fails. FERPA is merely a federal law that protects the privacy of student education records. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 276, 122 S. Ct. 2268, 2271 (2002) (explaining that FERPA "prohibit[s] the federal funding of educational institutions that have a policy or practice of releasing education records to unauthorized persons"). In other words, FERPA is more concerned with how institutions operate on a broad policy level rather than with individual requests. *Id*. ("FERPA's nondisclosure provisions . . . speak only in terms of institutional policy and practice, not individual instances of disclosure.") FERPA does not create a private right of action, with or without § 1983. *See Cudjoe v. Indep. School Dist. No. 12,* 297 F.3d 1058, 1062 (acknowledging that the Supreme Court in *Gonzaga* "held . . . that FERPA's nondisclosure provisions 'create no right enforceable under § 1983'"). The Crawfords' final claim is therefore dismissed.

VI. Injunctive Relief

Because Plaintiffs have withdrawn their request for injunctive relief, the Court dismisses that claim as moot.

## Conclusion

Plaintiffs' claims are therefore dismissed for failure to state a claim. Nothing forming the basis of their due process claim rises to the level of plausibility required. Similarly, their claims based on the Fifth Amendment and FERPA fail as a matter of law.

IT IS SO ORDERED this 13th day of January 2017.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE